UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| DEBRA L. HAMMER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:18-cv-54-HBG |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18]. Debra L. Hammer ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.  **PROCEDURAL HISTORY**

On April 29, 2015, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began on November 10, 2014. [Tr. 15, 99–100]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 148–51]. A hearing was held on March 10, 2017. [Tr. 37–69]. On June 9, 2017, the ALJ found that Plaintiff was not disabled.

[Tr. 15–27]. The Appeals Council denied Plaintiff's request for review on January 8, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on February 14, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since November 10, 2014, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); and affective disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), avoiding concentrated exposure to extreme cold and hot temperatures, wetness, environment irritants, such as chemicals, fumes, odors, dust, and gases. She would be limited to simple, routine and repetitive tasks, in a work environment free of fast paced work involving only simple work related decisions, and few, if any work place changes.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 4, 1962 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 10, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–27].

### III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

4

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence, as the ALJ failed to properly weigh the medical opinion evidence, and that the ALJ should have

applied the higher age category to find her disabled at Step Five of the disability determination. First, Plaintiff maintains that her RFC does not properly reflect the work-related limitations assessed by the nonexamining state agency psychological consultants, Pilar Vargas, M.D., and Maurice Prout, Ph.D., despite the ALJ's assignment of significant weight to Dr. Vargas and Dr. Prout's opinions. [Doc. 15 p. 9]. Additionally, Plaintiff asserts that the ALJ failed to properly evaluate and weigh the opinion of consultative examiner, Robert A. Blaine, M.D., pursuant to the applicable regulations. [*Id.* at 9–11]. Lastly, Plaintiff contends that the ALJ erred by failing to evaluate her case in a borderline age category using the Medical-Vocational Guidelines. [*Id.* at 11–12]. The Court will address Plaintiff's specific allegations of error in turn.

### A. Medical Opinions

#### 1. Nonexamining State Agency Physicians

Plaintiff asserts that the ALJ's RFC determination does not accurately reflect the social limitations assessed by Dr. Vargas and Dr. Prout, the nonexamining state agency psychological consultants who reviewed the evidence of record at the initial and reconsideration level of the agency's review. Despite claiming to afford significant weight to these opinions, Plaintiff argues the ALJ "failed to address inconsistencies" between the social limitations addressed in these opinions and the RFC determination. [Doc. 15 p. 9].

Opinions from non-treating, examining and non-examining medical and psychological consultants are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 404.1527(c)(1)–(6). Specifically, "[t]he Commissioner [] weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support

6

or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

Dr. Vargas reviewed the evidence of record at the initial level of the agency's review on April 5, 2015, and assessed Plaintiff's mental impairments and resulting limitations. [Tr. 94–96]. First, Dr. Vargas found that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, but that she was not significantly limited in the ability to remember locations and work-like procedures or the ability to understand and remember very short and simple instructions. [Tr. 94]. Next, Dr. Vargas opined that Plaintiff was not significantly limited with respect to sustained concentration and persistence limitations [*Id.*], but that Plaintiff was moderately limited in her ability to interact appropriately with the general public. [Tr. 95]. Additionally, Dr. Vargas found that Plaintiff was moderately limited in the ability to accept instructions and respond appropriately to criticism from superiors, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [*Id.*]. Lastly, Dr. Vargas stated that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting. [*Id.*].

Therefore, Dr. Vargas opined that Plaintiff could remember and understand simple and detailed, but not multistep, instructions; that Plaintiff has no significant limitations due to a mental impairment; that Plaintiff's interaction with the public should be on an occasional and one-to-one basis, in addition to that Plaintiff will work better with objects than with people; and that Plaintiff can accept and utilize supervision and criticism from both supervisors and coworkers, but may experience some difficulty. [*Id.*]. At the reconsideration level of the agency's review, Dr. Prout affirmed Dr. Vargas's opinion and found the same limitations. [Tr. 111–13].

The ALJ assigned "significant weight to the conclusions of the State Agency consultants,"

as their opinions "are consistent with the reported clinical findings and the medical evidence as a whole." [Tr. 24]. Additionally, the ALJ reviewed the conclusions of Dr. Vargas and Dr. Prout that Plaintiff "can understand and remember simple and detailed but not multistep detailed instructions with no significant limitations in sustaining concentration, persistence, or pace." [*Id.*]. Accordingly, the ALJ accommodated the limitations expressed in the opinions of the nonexamining state agency consultants "in the residual functional capacity by limitations of simple routine tasks involving simple work[-]related decisions and few changes." [*Id.*].

As an initial matter, the Court notes that when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence." *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013); *see Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13–cv–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)).

Specifically, Plaintiff challenges that the ALJ failed to include the social limitations opined by the nonexamining state agency consultants, including their opinions that: "Interaction with the public should be on occasional basis, one-on-one, will work better w/ objects than with people," and that Plaintiff "can accept and utilize supervision/criticism from supervisors and/or coworkers but may have some difficulty at times." [Doc. 15 p. 10]; *see* [Tr. 95, 113]. However, the ALJ detailed "[w]hile [Plaintiff] may have some social interaction limitations, she maintains the ability to ask simple questions or request assistance, interact with supervisors and co-worker[s]

8

adequately, and demonstrate appropriate behavior to adhere to basic standards of neatness and cleanliness." [Tr. 24].

Therefore, despite his assignment of great weight to Dr. Vargas and Dr. Prout's opinions, the ALJ properly detailed his reasoning for not including their opined social interaction limitations. *See, e.g.*, *Williams v. Comm'r of Soc. Sec. Admin.*, No. 1:17-CV-1137, 2018 WL 2451255, at *7 (N.D. Ohio May 11, 2018) (finding the ALJ did not improperly fail to incorporate social interaction limitations, despite the assignment of great weight to the opinions of an examining consultant and state agency reviewing psychologist, as "an ALJ is not required to adopt, verbatim, a medical opinion," and "[m]oreover, the ALJ explained why he found [Plaintiff's] social functioning to be less restrictive"), *report and recommendation adopted by*, 2018 WL 2441812 (N.D. Ohio, May 31, 2018); *Price v. Comm'r of Soc. Sec.*, No. 14-cv-13662, 2016 WL 3193025, at *2 (E.D. Mich. June 9, 2016) ("The ALJ's decision not to include the restrictions suggests that he did not intend to adopt that limitation. . . . Furthermore, the Court has reviewed the ALJ's order and the evidence as a whole, and finds that the ALJ's decision not to incorporate those limitations into the RFC was supported by substantial evidence."). The ALJ reviewed the opinions of the nonexamining state agency consultants, as well as the medical record as a whole with respect to Plaintiff's mental limitations, and found that the record did not support the assessed social interaction limitations. *See McCoy v. Comm'r of Soc. Sec.*, No. 3:15-cv-2308, 2016 WL 6565559, at *13 (N.D. Ohio Nov. 4, 2016) ("While the ALJ did not adopt each and every limitation from the opinions of Drs. Bergsten and Castro, the ALJ did not ignore their opinions nor did the ALJ fail to explain the weight provided to their opinions.").

Moreover, the ALJ's RFC determination is supported by substantial evidence. First, as the Court has already discussed, the ALJ reviewed the opinions of the nonexamining state agency

9

consultants and detailed how Plaintiff's mental limitations did not support all of the social interaction limitations assessed by Dr. Vargas and Dr. Prout. Next, the ALJ noted that Plaintiff was "cooperative and interacted well" with the consultative examiner, Candice Blake, Psy.D. [Tr. 24]. Further, the ALJ assigned little weight to Dr. Blake's opinion that Plaintiff's social interaction is moderately limited by depression, as this limitation "is mainly related to family issues." [*Id.*]. Additionally, the ALJ noted that there is no evidence of Plaintiff receiving any professional mental health treatment or being prescribed anti-depressant medication. [Tr. 19]. Lastly, when assessing Plaintiff's "paragraph B" criteria, the ALJ found that Plaintiff has no more than mild limitations when interacting with others, differentiating between Plaintiff's reported difficulties of getting along with family members with her good interactions with non-medical staff and the examiner during her consultative examination, and that "[a]ccording to her function report, [Plaintiff] is also able to get along with others." [*Id.*]. Accordingly, while the ALJ did not include the social interaction limitations assessed by Dr. Vargas and Dr. Prout, the mental RFC determination is supported by substantial evidence. *See, e.g.*, Maxwell v. Comm'r of Soc. Sec., No. 2:17-cv-835, 2018 WL 2173591, at *10 (S.D. Ohio May 11, 2018) ("Here, while the ALJ may not have adopted every possible limitation opined by the state agency consultants and Dr. Sours, the ALJ's mental RFC determination was supported by substantial evidence and is not inconsistent with the medical opinions in the record."), *report and recommendation adopted by*, 2018 WL 2463386 (S.D. Ohio June 1, 2018).

Ultimately, while the ALJ's RFC determination is not identical to the opinions of Dr. Vargas and Dr. Prout, the RFC is supported by substantial evidence. First, the determination of Plaintiff's RFC is an issue reserved to the Commissioner, and the ALJ is tasked to assess a claimant's RFC "based on all of the relevant evidence" of a record. 20 C.F.R. §§ 404.1545(a);

404.1546(c). The ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding . . . [and] an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (internal citations omitted). Here, the ALJ properly explained his rationale for the weight assigned to the opinions of Dr. Vargas and Dr. Prout, and his RFC determination is supported by substantial evidence in the record. Therefore, Plaintiff's assertion that the ALJ's RFC determination did not include all of the exact limitations from Dr. Vargas and Dr. Prout's opinion, despite the ALJ's assignment of great weight to these opinions, does not constitute a basis for remand.

### 2. Dr. Blaine

Plaintiff also claims that the ALJ failed to properly evaluate the opinion from the consultative examiner, Dr. Blaine, asserting that the ALJ failed to address inconsistencies between various pulmonary function tests. [Doc. 15 p. 10]. Plaintiff contends that although the ALJ afforded little weight to Dr. Blaine's opinion, and subsequently discussed how Dr. Blaine's opinion was in contrast to "reported non-severe parameters on pulmonary function testing" [Tr. 24], the ALJ failed to discuss later testing which found moderately severe obstruction. [Doc. 15 p. 10].

Dr. Blaine consultatively examined Plaintiff on July 7, 2015. [Tr. 375–77]. Plaintiff reported shortness of breath, along with past treatment for COPD, emphysema, and hypertension. [Tr. 375]. Plaintiff stated that she has pneumonia three or four times a year, and that she cannot afford her medications, although she still smokes. [*Id.*]. Dr. Blaine noted that Plaintiff has smoked for forty-four years, and that Plaintiff has shortness of breath, but that she was able to get from the

11

chair onto the examining table without difficulty. [Tr. 375–76]. Further, Dr. Blaine reported that Plaintiff's lungs were clear to auscultation bilaterally, and Plaintiff is not dyspneic. [Tr. 376].

Accordingly, Dr. Blaine opined that Plaintiff could stand or walk for three hours in an eight-hour day, although she was limited primarily by dyspnea. [Tr. 377]. Additionally, Dr. Blaine found that Plaintiff could lift and carry ten pounds frequently, and probably forty pounds infrequently, and that Plaintiff could sit for eight hours with reasonable breaks. [*Id.*]. Dr. Blaine stated that his opinion was based on his examination of Plaintiff, as well as medical records consisting of a function report, "some PCP office notes, and reports on two chest x-rays," and the "medical evidence of record provided by the DDS." [*Id.*].

Opinions from nontreating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Additionally, an ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). Lastly, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

12

The ALJ reviewed and ultimately afforded little weight to Dr. Blaine's opinion [Tr. 22–23], as it was "internally inconsistent with his reported physical findings." [Tr. 24]. The ALJ noted that while Dr. Blaine found that Plaintiff's "exertional limitations are primarily related to dyspnea; his physical findings noted her lungs are clear bilaterally and she was not dyspneic at the examination." [*Id.*]. Further, when reviewing the opinion, the ALJ detailed that "[p]re-bronchodilation pulmonary function testing show[s] non-severe parameters," as "[t]here are no abnormal cardiovascular, musculoskeletal, or neurological physical findings." [Tr. 23].

Plaintiff challenges the ALJ's rationale that Dr. Blaine's opinion was inconsistent with his examination findings, claiming that the ALJ should have also indicated that Dr. Blaine reviewed Plaintiff's medical records in part to determine his overall assessment. [Doc. 15 p. 10]. 20 C.F.R. § 404.1517 requires that the government provide any consultative examiner with background information regarding the claimant's alleged symptoms. However, the regulation "does not place an imperative on the agency to provide a consultative examiner with a full medical record, but only explains that '[w]e will also give the examiner any necessary background information about your condition.'" *Grant v. Colvin*, No. 3:14-cv-399, 2015 WL 4713662, at *13 (E.D. Tenn. Aug. 7, 2015) (quoting 20 C.F.R. § 404.1517). Further, in the present case, the ALJ found that Dr. Blaine's opinion was inconsistent with his own physical findings based upon his examination of Plaintiff. Therefore, Plaintiff's claim that the ALJ should have indicated that Dr. Blaine reviewed Plaintiff's medical records does not constitute a basis for remand.

Ultimately, the ALJ properly explained his reasoning for affording little weight to the opinion of the consultative examiner, finding that Dr. Blaine's opinion was inconsistent with his physical findings that Plaintiff's lungs are clear and she was not dyspneic. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 469 (6th Cir. 2012) (holding a consultative examiner's

13

opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"); *Hinkle v. Berryhill*, No. 2:17-CV-54, 2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record, as well as reviewed Plaintiff's subjective allegations); *see also* 20 C.F.R. § 404.1527(c) (directing that an ALJ evaluates a non-treating source opinion by considering the supportability of the opinion). Additionally, in further support of his assignment of little weight to Dr. Blaine's opinion, the ALJ detailed that the nonexamining state agency consultants, Dr. Mather and Dr. Goldsmith, found that Dr. Blaine's conclusions were overly restrictive due to Plaintiff's reported clear lungs and "reported non-severe parameters on pulmonary function testing." [Tr. 24].

Plaintiff also claims that the ALJ failed to address the significant inconsistency between the pulmonary function testing Dr. Mather and Dr. Goldsmith were referring to, performed on July 7, 2015, and later testing performed on November 17, 2015 which found moderately severe obstruction. [Doc. 15 p. 10]. However, the ALJ properly found that Dr. Blaine's opinion was inconsistent with his own examination findings, mainly that Plaintiff's lungs were clear and she was not dyspneic at the examination. Additionally, the ALJ discussed the pulmonary function test performed on November 17, 2015, and noted that the test "suggested moderately severe obstruction." [Tr. 22]. Moreover, the pulmonary function testing which Plaintiff asserts is inconsistent with the ALJ's reasoning for discounting Dr. Blaine's opinion was performed after the July 7, 2015 date of the examination. Therefore, the ALJ considered the subsequent pulmonary function test as a part of the overall medical record, but found that Dr. Blaine's opinion, which

14

was largely based on the consultative examination, was inconsistent with the physical findings of that examination.

Accordingly, the Court finds that the ALJ's assignment of little weight to the opinion of Dr. Blaine is supported by substantial evidence, as the ALJ properly weighed the applicable statutory factors and explained the basis for affording little weight to the opinion.

### B. Borderline Age Category

Plaintiff contends that due to her borderline age, the ALJ should have applied the Medical-Vocation Guidelines for a person of "advanced age" to find her disabled, rather than the category of an individual closely approaching advanced age, as the ALJ's decision was dated less than one month before she would have turned fifty-five. [Doc. 18 p. 17]; *see* 20 C.F.R. part 404, subpart P, appendix 2.

"Age" is defined in 20 C.F.R. §§ 404.1563(a) and 416.963(a) as being the claimant's "chronological age." In a disability determination, the Commissioner considers an individual's "chronological age in combination with [a claimant's RFC], education, and work experience." 20 C.F.R. §§ 404.1563(a) and 416.963(a). Additionally, age is a factor in determining an individual's ability to adjust to other work, where "advancing age" is considered "to be an increasingly limiting factor in the person's ability to make such an adjustment." *Id.* Specifically, the regulations make the following distinctions:

> (d) Person closely approaching advanced age. If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.
>
> (e) Person of advanced age. We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older). See

15

§ 404.1568(d)(4).

20 C.F. R. §§ 404.1563(d)-(e); and 416.963(d)-(e).

However, under 20 C.F.R. § 404.1563(b), the Social Security Administration "will not apply the age categories mechanically in a borderline situation." The Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) states that a borderline situation exists when: (1) the claimant's age is within a few days or months of a higher age category; and (2) use of the higher age category would result in a finding of disability. *Borderline Age*, HALLEX I-2-2-42, 2016 WL 1167001, at *1 (Mar. 25, 2016).

"Generally, SSA considers a few days to a few months to mean a period not to exceed six months." *Id.* Here, Plaintiff was born on July 4, 1962. [Tr. 25]; *see* [Doc. 15 p. 11]. On the amended alleged disability onset date, Plaintiff was 52 years old. [Tr. 25]. However, by the date of the decision, on June 9, 2017, Plaintiff was twenty-five days away from turning 55. Therefore, Plaintiff argues that the ALJ should have applied the borderline age category of a person of advanced age.

However, to determine if a borderline age situation exists in the current case, the Court must determine whether "using the older age category would result in a determination or decision that [Plaintiff] disabled." 20 C.F.R. §§ 404.1563(b) and 416.963(b). Here, the Commissioner correctly asserts that Medical-Vocational Rule 203.14 would not result in a determination that Plaintiff is "disabled." Additionally, Plaintiff fails to argue that she would have been deemed disabled pursuant to Medical Vocational Rule 203.14.

In the disability decision, the ALJ found Plaintiff's "severe impairments" to include COPD and affective disorder. [Tr. 17]. Further, the ALJ noted "that [i]f the claimant had the [RFC] to perform the full range of medium work, a finding of 'not disabled' would be directed by Medical-

16

Vocational Rule 203.22. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." [Tr. 24]. Next, to analyze the extent of these limitations, the ALJ asked the VE to determine what positions might be available to an individual with Plaintiff's specific limitations. [*Id.*]. The VE then identified two jobs in the regional and national economies that an individual with Plaintiff's limitations could perform—as a linen room attendant and as a warehouse worker. Further, the ALJ also considered that an individual who could perform a restricted range of medium unskilled work could also perform work at a light exertion level, including as a sales attendant, mail clerk, and stock checker/apparel. [Tr. 26].

Therefore, because the ALJ relied on the Medical-Vocational Rules only as a framework, it was not inevitable that Plaintiff would have met a finding of "disabled" if she was placed in a higher age category. First, because there was substantial evidence to support the ALJ's finding that Plaintiff has at least a high school education and is able to communicate in English [Tr. 25], and that Plaintiff's previous work experience was unskilled, the Medical-Vocational Rules would indicate a finding of "not disabled" regardless of whether Plaintiff was designated as an individual of "advanced age" under Medical-Vocational Rule 203.14. See 20 C.F.R. Pt. 404, subpt. P, app. 2., § 203.14. Accordingly, although Plaintiff was "within a . . . few months of reaching an older age category," the evidence does not establish that "using the older age category would result in a determination or decision that [the claimant is] disabled," and as a result, the regulations did not require the ALJ to "consider whether to use the older age category after evaluating the overall impact of all the factors" in each case. 20 C.F.R. §§ 404.1563(b) and 416.963(b); *see, e.g.*, *Anderson v. Colvin*, No. 1:16-cv-139-SKL, 2017 WL 3221664, at *9–11 (E.D. Tenn. July 27, 2017) (finding the ALJ did not err in the use of chronological age despite the existence of a

17

borderline age category).

Additionally, the Court notes that the ALJ did not mechanically apply the Medical-Vocational Rules. As the ALJ detailed in his decision, the ALJ used the Medical-Vocational Rules only as a "framework," and considered Plaintiff's limitations resulting from her severe impairments and the testimony of the VE. [Tr. 26]. Further, the ALJ was aware of Plaintiff's age, as the ALJ cited to Plaintiff's date of birth, as well as 20 C.F.R. §§ 404.1563 and 416.963. [Tr. 25]; *see Ramsey v. Soc. Sec. Admin.*, No. 3:14-1917, 2016 WL 727547, at *6, n.5 (M.D. Tenn. Feb. 24, 2016) (noting a citation to 20 C.F.R. § 404.1563 indicates that the ALJ "was plainly aware" of Plaintiff's date of birth, and "[t]he fact that the ALJ made such findings while referring to § 404.1563 has been noted to provide some indication that the ALJ considered the arguably borderline age situation"), *report and recommendation adopted by*, 2016 WL 1044973 (M.D. Tenn. Mar. 16, 2016). During the hearing, the ALJ also noted that Plaintiff turns 55 in approximately "three months." [Tr. 65].

Lastly, the Court notes that "nothing in [20 C.F.R. § 404.1563] obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the regulation merely promises claimants that the Administration will 'consider' veering from the chronological-age default in borderline situations." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). The Sixth Circuit in *Bowie* found that there were not "additional vocational adversities" that would justify placing the plaintiff in the older age category, and states, as an example, that "substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the 'younger individual' age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry." *Id.* at 401.

As another court within the Sixth Circuit has explained:

> The *Bowie* example is the benchmark by which courts should analyze whether significant enough additional vocational adversities exist to warrant discussion of a claimant's borderline age by an ALJ. In *Bowie* itself, the Court compared the claimant's situation to the hypothetical and found no evidence that the claimant had any additional vocational adversities that would justify a higher age category. *Id.* at 401. The Sixth Circuit repeated this approach in *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 516 (6th Cir. 2011), when it compared a claimant's additional vocational adversities to the *Bowie* hypothetical.

*Henry v. Colvin*, No. 14-CV-445, 2016 WL 1171531, at *9 (E.D. Ky. Mar. 23, 2016), *aff'd*, 678 F. App'x 392 (6th Cir. 2017). In *Caudill*, the Sixth Circuit examined the case of a claimant who was approximately 54 years and 10 months old at the time of the ALJ's decision, had a second-grade reading level, and whose only relevant work experience was in the coal mining industry, yet whose borderline age situation was not mentioned in the ALJ's decision. 424 F. App'x at 518. However, the disability determination of the plaintiff in *Caudill* was found to have been properly decided under his chronological age classification, without a discussion of his borderline age. *Id.*

Here, Plaintiff does not point to any "additional vocational adversities" that would require a borderline age analysis by the ALJ. *See Henry*, 2016 WL 11171531, at *9. Further, although Plaintiff was less than a month from her fifty-fifth birthday at the time of the ALJ's decision, she was found capable of performing a limited range of medium work, and the ALJ found that her "subjective complaints of disabling physical limitations are disproportionate to the objective clinical and diagnostic medical evidence." [Tr. 21]. Additionally, Plaintiff's allegations of disability do not compare to the hypothetical in *Bowie* or the plaintiff in *Caudill*.

Ultimately, "[t]he fact that age categories are not to be applied mechanically, [ ] obviously does not mean that a claimant must be moved mechanically to the next age category whenever her chronological age is close to that category." *Van der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x

521, 528 (6th Cir. 2006); *see Caudill*, 424 F. App'x at 516–18 (holding ALJ did not err in categorizing plaintiff as an individual "closely approaching advanced age," rather than person of "advanced age," even though the plaintiff was fifty-four years and ten months at the time of the hearing decision). Accordingly, the Court finds that the decision of the ALJ to use Plaintiff's chronological age is supported by substantial evidence.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge